**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER KNOX (#B-61090), | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:20-cv-4225 |
| | ) | |
| DR. CATHERINE LARRY | ) | HON. CHARLES R. NORGLE, SR. |
| | ) | |
| NOMINAL DEFENDANT. | ) | |

**FIRST AMENDED COMPLAINT**

Christopher Knox complains of Defendant, Dr. Catherine Larry, as follows:

**I. PARTIES**

1.     Plaintiff Christopher Knox is an inmate incarcerated by the Illinois Department of Corrections ("IDOC"). At all times relevant to this action, Mr. Knox was under the care and custody of the IDOC at the Joliet Treatment Center located at 2848 West McDonough St., Joliet, Illinois 60436 (the "Treatment Center"). Mr. Knox is presently under the care and custody of the IDOC at the Treatment Center.

2.     Dr. Catherine Larry is an individual who, on information and belief, is the current warden of the Treatment Center.  Mr. Knox is suing Dr. Larry in a nominal capacity in order to initiate discovery and obtain the full and complete identity of the individuals named in this Complaint.

**II.     JURISDICTION AND VENUE**

3.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) in that this case involves a cause of action under the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983.

4.      Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, in that the Defendants reside in this judicial district, and a substantial part of the events giving rise to the claim occurred in this district.

### III.    STATEMENT OF THE FACTS

5.      Plaintiff Knox (hereafter "Mr. Knox") has a history of mental illness accompanied by attempts of suicide and self-mutilation.

6.      Prior to being transferred to the Treatment Center, Mr. Knox's condition was effectively treated through medication and one-on-one therapy. Mr. Knox received no further therapy after arriving at the Treatment Center. Despite Mr. Knox's repeated requests to continue treating his mental illness through one-on-one therapy, the Treatment Center refused to provide such treatment.

7.      On September 28, 2019, Mr. Knox was experiencing thoughts of suicide and self-harm.

8.      Mr. Knox informed Correctional Training Officer ("CTO") Johnson, CTO Greer, and Lieutenant Clark—employees of the Treatment Center—of the suicidal ideation he was experiencing and requested the assistance of a mental health professional. Even though CTO Johnson, CTO Greer, and Lieutenant Clark were on notice of the need for an immediate mental health intervention, not one of them retrieved a mental health professional for Mr. Knox. Instead, they sent him back to his cell.

9.      Thereafter, Mr. Knox engaged in self-mutilation by folding an ink cartridge into the shape of a "V" and inserting the pointed end of the ink cartridge into his urethra. The ink cartridge was inserted far enough internally to cause a blockage in Mr. Knox's urethra. As a result of the blockage, Mr. Knox began experiencing swelling in his

bladder and groin area, difficulty urinating, blood in his urine, and severe pain and suffering.

10.     Immediately following the incident, Mr. Knox verbally informed CTO Johnson, CTO Greer, and Lieutenant Clark of the incident of self-mutilation and plead with them to send him for medical treatment. Despite Mr. Knox's request - and repeated requests thereafter (while in obvious pain to any reasonable observer) - CTO Johnson, CTO Greer, and Lieutenant Clark refused to send Mr. Knox for medical treatment.

11.     At approximately 9:30 p.m. on September 28, 2019, Mr. Knox made another desperate request for medical treatment to CTO Johnson and CTO Greer while both individuals conducted a routine count of the inmates. Both CTO Johnson and CTO Greer ignored Mr. Knox's request and left Mr. Knox in his cell without medical treatment, even though it was clear to any reasonable observer that Mr. Knox was in need of medical treatment.

12.     The following day, on September 29, 2019, Mr. Knox informed a nurse at the Treatment Center, Nurse Bear, of his medical condition and made a request to receive medical attention. Despite Mr. Knox informing Nurse Bear of his injuries and resulting pain he was experiencing, Bear refused to fulfill Mr. Knox's request and Mr. Knox did not receive any medical treatment.

13.     On two separate occasions in or about October 2019, Mr. Knox requested medical treatment for the above referenced injuries from Dr. Osmundson and Dr. Bautista while they conducted routine rounds in the segregation unit of the Treatment Center. Mr. Knox explained to both doctors that he was experiencing pain, discomfort, swelling in his groin area, and was urinating blood. Despite having never performed a physical

examination on Mr. Knox, both doctors informed Mr. Knox that the pen would pass through Mr. Knox's urethra while urinating and walked away.

14.     In or about November 2019, Mr. Knox again requested medical treatment from Nurse Bear for the continued pain and discomfort he was feeling as a result of the foreign body lodged in his urethra. Upon hearing of his condition and continued pain, Nurse Bear informed Mr. Knox that there was nothing she could do about the ink cartridge being stuck in his urethra and refused to submit Mr. Knox for an appointment to see a doctor. Nurse Bear stated that Mr. Knox would have to urinate the foreign body out, despite it having been well over a month since Mr. Knox sustained his injury and Mr. Knox had still not passed the ink cartridge by urinating.

15.     In or about December 2019, Mr. Knox made multiple requests for medical treatment for the above referenced injuries as he still felt the ink cartridge stuck in his urethra and had not yet urinated it out over two months later. Multiple nurses at the Treatment Center—Nurse Resuali, Nurse Dodson, and Nurse Bear— were each put on notice of Mr. Knox's condition and the pain and discomfort he was experiencing, but each refused Mr. Knox's request to be examined by a doctor and have the foreign body removed from his urethra.

16.     In or about January 2020, Mr. Knox requested medical treatment and the removal of the foreign body from his urethra from Dr. Prasad. Mr. Knox informed Dr. Prasad that the medication he had been taking for shoulder pain was not working to address the pain he was experiencing in his groin area, that he had still not urinated out the ink cartridge, and that he was experiencing increased pain and suffering. Dr. Prasad

made no attempt to remove the foreign body from Mr. Knox's urethra. In fact, Dr. Prasad refused to even conduct a physical examination of Mr. Knox

17.     In or about April 2020, Mr. Knox again requested medical treatment from Dr. Prasad for the continued swelling in his groin area, pain, and blood in his urine. Dr. Prasad again refused to perform a physical examination of Mr. Knox, stating that performing a physical examination of Mr. Knox would be against the rules. Dr. Prasad, however, never specified what this "rule" was. Once again, Mr. Knox's request for medical treatment for his injuries fell on deaf ears.

18.     On or about August 12, 2020, only after the filing of Mr. Knox's initial complaint, Mr. Knox was sent to see an outside specialist in urology. After performing a physical examination, the urologist informed Mr. Knox that he believed a foreign body was still stuck in Mr. Knox's urethra. The specialist also advised that Mr. Knox would need further medical treatment to have that foreign body removed.

19.     In September 2020, an outside specialist in urology performed surgery on Mr. Knox and removed the foreign body from his urethra, thus, confirming that a foreign body was lodged in Mr. Knox's urethra since September 28, 2019.

20.     For almost an entire year, the individuals identified herein have repeatedly refused and/or ignored Mr. Knox's requests for one-on-one therapy and medical attention to address the foreign body in his urethra and the pain and discomfort he was experiencing. These individuals have known and have been deliberately indifferent to the fact that Mr. Knox continued to experience pain and suffering resulting from having a foreign body lodged in his urethra. Indeed, Mr. Knox would not have suffered his initial injury or, at the very least, not suffered continued pain and discomfort for more than a

year if even one of these individuals had acted in response to any of Mr. Knox's pleas for

help.

## CLAIM FOR RELIEF

### (42 U.S.C. § 1983—Eighth Amendment Violation: Failure to Provide Medical Care)

21.     Mr. Knox re-alleges the paragraphs above as if fully restated herein.

22.     At all times relevant to the allegations in this Complaint, the individuals

identified herein acted or failed to act under color of state law.

23.     These individuals are persons under 42 U.S.C. § 1983.

24.     The individuals knew of Mr. Knox's suicidal ideation and self-harm

concerns as well as his resulting serious medical condition and accompanying severe pain.

Nevertheless, with knowing and deliberate indifference to Mr. Knox's Eighth Amendment

right to be free from cruel and unusual punishment, they unreasonably refused him

necessary medical care that would have prevented the injury and/or the resulting pain and

discomfort.  The individuals continue to deny necessary medical assistance.

25.     The acts and/or omissions of the individuals identified herein were the

legal and proximate cause of Mr. Knox's injuries, the exacerbation of those injuries and

Mr. Knox needlessly continuing to experience severe pain and discomfort for more than a

year.

26.     The acts and/or omissions of each individual caused Mr. Knox damages in

that he suffered, and continued to suffer, physical injury and prolonged physical and

mental pain from the failure to treat his serious medical conditions.

27.     The acts and/or omissions of each individual as described herein

intentionally deprived Mr. Knox of the securities, rights, privileges, liberties, and

immunities secured by the United States Constitution, and caused him other damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Christopher Knox, respectfully requests this Court enter judgment in his favor and against Defendant, and grant him the following relief:

A.      Discovery to obtain records as well as the necessary information to identify the individuals described in the Amended Complaint's factual allegations;

B.      Leave to amend the Amended Complaint to add additional individual defendants based on this discovery;

C.      An order requiring Defendant to establish policies and procedures to prevent the violation of Mr. Knox's rights;

D.      Compensatory and consequential damages, including damages for physical pain, emotional distress, loss of enjoyment of life, and other pain and suffering as allowed by law and in an amount to be determined at trial, awarded against Defendant in her individual and official capacity;

E.      Punitive damages as allowed by law and in an amount to be determined at trial, awarded against Defendant in her individual and official capacity;

F.      Injunctive relief ordering Defendant to provide Mr. Knox with the necessary medical care;

G.      Attorneys' fees and costs associated with this action as allowed by law;

H.      Pre- and post-judgment interest at the lawful rate; and

I.      Any further relief that this Court deems just and proper, and any other relief as allowed by law.

Dated: October 2, 2020                    Respectfully submitted,

                                          Christopher Knox (#B-61090)


                                          By:  /s/ Kaitlin M. Phillips
                                             One of the Attorneys for Christopher Knox




Gary R. Clark, ARDC #6271092
gary.clark@quarles.com
Kaitlin M. Phillips ARDC #6333190
kaitlin.phillips@quarles.com
Quarles & Brady LLP
300 N. LaSalle Street, Suite 4000
Chicago, Illinois 60654
(312) 715-5000