IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER KNOX, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) No. 20 CV 4225 |
| | ) |
| JANETTE JOHNSON, et al., | ) Judge Virginia M. Kendall |
| | ) |
| *Defendants*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Christopher Knox, an inmate formerly in the custody of the Joliet Treatment Center ("JTC"), filed this lawsuit against Defendants Janette Johnson, Tammy Greer, Qyjon Clark, and Dr. Catherine Larry (collectively the "IDOC Defendants"), and Defendants Dr. Lekha Prasad, Dr. Catalino Bautista, Dr. Kurt Osmundson, Craig Bear, Catherine Dodson, and Angela Resuali, (collectively the "Medical Defendants"), alleging violations of his civil rights pursuant to 42 U.S.C. § 1983. (Dkt. 23). Specifically, Knox argues that Defendants violated his Eighth Amendment rights based on their failure to provide medical care arising from a self-harm incident in September 2019. (*Id.*)

Under the Prison Litigation Reform Act ("PLRA"), Knox, like any prisoner, may not initiate a suit concerning his confinement conditions under federal law prior to exhausting "such administrative remedies as are available" within the jail. *See* 42 U.S.C. § 1997e(a). Knox claims he filed two emergency grievances related to the self-harm incident in 2019; JTC and the Illinois Department of Corrections Administrative Review Board ("ARB") have no such record. (Dkt. 73 at ¶ 4). Based on this conflict, on July 25, 2023, the Court held a *Pavey* hearing to resolve the

1

factual issues surrounding Knox's exhaustion. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008); (Dkt. 90). The Court finds that Knox failed to exhaust his administrative remedies and therefore his claims are dismissed.

## BACKGROUND

From May 2018 to December 2020, Plaintiff Christopher Knox was an inmate in the custody of the Illinois Department of Corrections ("IDOC") housed at JTC. (Dkt. 23 ¶ 1; Dkt. 92 at 7:14–16). Knox has a history of mental illness and on September 28, 2019 experienced thoughts of suicide and self-harm. (Dkt. 23 ¶¶ 15, 17). During this episode, Knox engaged in self-harm by inserting an ink cartridge into this urethra, causing a blockage, pain, and swelling. (*Id.* at ¶ 19). The ink cartridge was ultimately removed in September 2020. (*Id.* at ¶ 32). At issue here, Knox claims he filed two emergency grievances requesting medical treatment to JTC's Chief Administrative Officer (the Warden) on September 28, 2019, and October 9, 2019. (*Id.* at ¶¶ 22, 25). On July 15, 2020, Knox filed suit against the IDOC and Medical Defendants under 42 U.S.C. § 1983 alleging violations of his Eighth Amendment rights due to failure to provide medical care. In March 2023, all Defendants moved for a hearing on Knox's failure to properly exhaust the administrative remedies available to him, arguing he never attempted to grieve the specific events giving rise to his claims. (Dkts. 73, 74). The Court held the *Pavey* hearing on July 25, 2023, to resolve these factual issues. (Dkt. 90).

The Court heard from Knox, JTC Grievance Officer Nicholas Rossi, and IDOC ARB Chairperson Ryan Kilduff. (*See id.*) The Court also reviewed documentary evidence, including Knox's grievance log for the relevant period, Knox's Cumulative Counseling Summary that recorded interactions with counselors and other staff, and the IGRV appeal log kept by the ARB. (Dkt. 92 at 57:6–12; Dkts. 95-1–95-3). JTC keeps records of all grievances filed, even if they are

2

incorrectly completed by inmates. (Dkt. 92 at 50:10).

At the hearing, Knox stated he filled out an emergency grievance on the date of the episode against the correctional staff. (*Id.* at 10:12–13; 11:11–16). On October 9, 2019, he filed another emergency grievance against the medical staff after he was denied treatment. (*Id.*) Knox claims he placed both emergency grievances in the inmate grievance box outside his quarters. (*Id.* at 12:19–21). A prisoner may submit an emergency grievance directly to the Warden if there is a substantial risk of imminent injury or other harm. 20 Ill. Adm. Code § 504.840(a). If the Warden determines the grievance should not be handled as an emergency, they must notify the prisoner in writing of their determination and that the prisoner may submit the grievance through the standard grievance procedures. § 504.840(c). The prisoner may appeal the Warden's decision in writing to the ARB within 30 days. § 504.840(a).

Knox claims he did not receive a response to both emergency grievances. (Dkt. 92 at 15:9, 13). He followed up on an unspecified date by "sp[eaking] with both my counselor and also with the warden." (*Id.* at 15:21–22). In his verbal conversation with the Warden, Knox recalls she told him that "she had received my grievance . . . and she was going to make her response . . . [and] if I was dissatisfied with her response, send it to the counselor." (*Id.* at 16:19–25). Knox also claims his counselor said she was going to check into his emergency grievances. (*Id.* at 17:11; 18:2). Knox never filed a grievance stating he did not hear back from the September 28, 2019 and October 9, 2019 emergency grievances. (*Id.* at 37:23). Nor did he file any subsequent grievances relating to his instant claims against Defendants. (*Id.* at 30:25).

**LEGAL STANDARD**

"Prisoners must properly exhaust all available administrative remedies before pursing claims, including § 1983 actions, in federal court." *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) (citing 42 U.S.C. § 1997e(a)). Moreover, the prisoner must exhaust his grievances according to prison procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 84, 88 (2006). This Court requires strict adherence to the exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The appropriate analysis focuses on whether the plaintiff did all he could to avail himself of the administrative process. *Taylor v. Cook Cnty.*, No. 11 C 7427, 2013 WL 2285806, at *4 (N.D. Ill. May 23, 2013). If he followed the prescribed steps and did all that was reasonable, then available remedies were exhausted. *Dole*, 438 F.3d at 811. However, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance. *Id.* at 809; *see also Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (grievance process unavailable given jail's failure to respond to inmate's grievance, his inquiries about it, and his follow-up grievance during four-month period after response was due). But a prisoner "may not simply sit on his hands and abandon the grievance process when he receives no response." *Goldmsith v. Zolecki*, No. 12 CV 3965, 2013 WL 5699302, at *6 (N.D. Ill. 2013) ("Simply submitting a grievance and not receiving a response is insufficient to establish that the grievance process is unavailable."); *see also Salley v. Parker*, No. 18 CV 5700, 2020 WL 4736412, at *9 (N.D. Ill. Aug. 14, 2020) (collecting cases); *Taylor*, 2013 WL 2285806, at *4 (same).

While exhaustion requirements are strict, failure to exhaust is an affirmative defense and defendants maintain the burden of proof. *See Wallace v. Baldwin*, 55 F.4th 535, 544 (7th Cir. 2022). Courts analyze a prisoner's exhaustion under the preponderance of the evidence standard.

4

*See, e.g.*, *Hebron v. Baldwin*, No. 17 CV 6254, 2020 WL 757900, * 1 (N.D. Ill. Feb. 14, 2020). Moreover, at *Pavey* hearings, the court may hear evidence, find facts, and determine credibility. *See Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) (citing *Pavey*, 663 F.3d at 904). After finding facts, the court may then allow the claim to proceed or dismiss for failure to exhaust. *Id.*

## DISCUSSION

Under the PLRA, an inmate must exhaust his administrative remedies by following the procedural rules for grievances where he is incarcerated. There is no dispute that Knox had a remedy to exhaust at JTC through the grievance process. *Wallace*, 55 F.4th at 542 (stating a remedy is "available" when it is "capable of use" to obtain "some relief for the action complained of") (quoting *Ross v. Blake*, 578 U.S. 632, 642–43 (2016)). This is a practical inquiry. *Id.* Knox frequently availed himself of JTC's emergency and standard grievance procedures. He had previously filed over one thousand grievances, including 20 emergency grievances, and 30 lawsuits while incarcerated. (Dkt. 92 at 13:23; 19:7; 26:9). In fact, from solely September through November 2019, Knox filed at least five grievances unrelated to the instant claims, received responses, and filed appeals to the ARB. (Dkt. 95-2).

Yet, the remedy may become "unavailable" when prison officials fail to respond. *Dole*, 438 F.3d at 809; *Brengettcy*, 423 F.3d at 682. The issue here is simply whether JTC's grievance process became "unavailable" to Knox when he claims he submitted two emergency grievances that were not logged or responded to by JTC. Weighing the evidence and determining credibility, the Court finds that Knox's administrative remedies were available to him, and he did not do all that was reasonable to exhaust before bringing this suit.

The record before the Court contains no evidence, other than Plaintiff's allegation, that he filed two emergency grievances regarding the underlying incident. Knox testified and stated in his

5

Complaint and Affidavit that he filed the emergency grievances on September 28, 2019 and October 9, 2019. (Dkt. 23; Dkt. 96-1). Conversely, Defendants offered the grievance log and counseling summary which contain no record of Knox filing anything on those dates. (Dkt. 95-2; Dkt. 95-3). They do indicate a flurry of activity in 2019, however, including on the surrounding dates. Knox's grievance log shows emergency grievances filed on October 2, 2019 and December 25, 2019. (Dkt. 95-2). Knox also filed non-emergency grievances on, among other dates, September 18, 2019, October 2, 2019, and October 4, 2019 related to "Staff Conduct." (*Id.*) These were all recorded as responded to in the counseling summary.[1] Knox was also familiar with the requirement of appealing to ARB. In fact, he received a final decision from the ARB on September 17, 2019—which he understood meant the grievance process was exhausted—just days before the first alleged September 29, 2019 emergency grievance. (Dkt. 92 at 25:4–9). He also appealed the December 25, 2019 emergency grievance to the ARB. (*Id.* at 31:16–22).

To be sure, the Court acknowledges the grievance log's shortcoming lies its lack of substantive description of the grievances. Knox identified September 28, 2019 and October 9, 2019 in his Complaint and Affidavit as the exact dates he filed the emergency grievances. (Dkt. 23; Dkt. 96-1). Yet during the hearing, Knox testified that those dates were based on memory, so he could have filed the emergency grievances on different dates close to the time period. (Dkt. 93 at 3 n.1; Dkt. 92 at 41:10–42:4). Though this conflicting testimony muddies the factual record, it does not impact the Court's analysis. The grievance log and counseling summary show no unanswered emergency grievances related to medical treatment filed close to those dates. (Dkt. 95-2). Moreover, even if the September 18, 2019 and October 4, 2019 non-emergency grievances related to

---

[1] The September 18, 2019 and October 4, 2019 grievances were sent back to Knox on October 21, 2019 for not being "submit[ted] properly in counselor box to get logged." (Dkt. 95-3). The one emergency grievance from October 2, 2019 was similarly "deemed not an emergency by CAO" and was sent back to Knox on November 13, 2019. (*Id.*)

"Staff Conduct" were in fact the grievances Knox is thinking of, they were returned to him and he did not appeal them to the ARB, a prerequisite for exhaustion. (*See* Dkt. 96-3; Dkt. 92 at 90:8).

In any event, taken together, the Court is persuaded that if Knox had submitted the emergency grievances to the Warden as he claimed, they would have been recorded. The Court is unpersuaded that the counseling summary and grievance logs—which contain detailed responses to Knox's grievances in September and October 2019—do not contain a single mention of his two purported emergency grievances or verbal complaints of JTC's failure to answer. *See Wallace*, 55 F.4th at 544 (finding the grievance log and counseling records constitutes a "direct contradiction" of prisoner's testimony that his grievance and follow-up letters went unanswered); *Daniels v. Prentice*, 741 F. App'x 342, 344 (7th Cir. 2018) (affirming the district court's conclusions after it "credited the . . . evidence [a defendant] submitted [to show failure to exhaust], including records of . . . grievance activity, . . . counseling record[s], and affidavits explaining the prison's grievance procedure").

Knox does not provide any theory for why only these two emergency grievances would not be logged and received, while the four other grievances from September 18–October 2, 2019 made the cut. *See Sangathit v. Jones*, No. 19 CV 860, 2021 WL 2822897, at *5 (S.D. Ill. July 7, 2021) ("To credit Plaintiff's testimony would require inferring, without any evidentiary support, that . . . officials conspired to prevent him from filing grievances as to the allegations in this case but not to prevent grievances as to unrelated claims."). Knox's active engagement in multiple levels of the grievance process during the time period in which he claims his emergency grievances were lost cut against his testimony and point to the "availability" of administrative remedies.

Moreover, for the remedy to become "unavailable," Knox must do more than "sit on his hands" when he received no response. *Goldsmith v. Zolecki*, No. 12 CV 3965, 2013 WL 5699302,

7

at *6 (N.D. Ill. Oct. 18, 2013). Rather, he must "follow-up with prison authorities, especially if he is familiar with the grievance process and knows to expect a response within a certain time frame." *Id.*; *Figueroa v. Corr. Officer Mason*, No. 14 CV 9238, 2016 WL 5477528, at *3 (N.D. Ill. Sept. 29, 2016); *Taylor*, 2013 WL 2285806, at *4–5. At the hearing, Knox displayed intimate familiarity with filing emergency grievances, explaining he would usually receive a response from the Warden along with a copy of his original grievance, then forward the Warden's response to his counselor, and then appeal it to the ARB. (Dkt. 92 at 14:2–8, 11–15).

But in this instance, Knox held the belief that "once I put the grievance inside the grievance box, it was . . . out of my control. There was nothing else I could do." (Dkt. 92 at 12:21–23). Knox's only follow-up to the two emergency grievances was two, vague oral conversations with his counselor and the Warden. These are insufficient to persuade the Court Knox exhausted his administrative remedies. First, the statements by the Warden and counselor are inadmissible hearsay, provided for the truth of whether Knox's grievances were in fact written and received by JTC. To the extent they show what Knox was told and its effect on his action or inaction in following-up, the Court is unpersuaded that the undated statements excused Knox's subsequent year-long inaction before filing suit. More damaging to Knox, the Warden's purported statement actually instructed Knox on the subsequent process if he was dissatisfied with her response. *C.f. Dole*, 438 F.3d at 811 (acknowledging it was possible "our holding would be different if [the prison] had given [defendant] instructions on how to proceed"). Nor are the statements particularly credible considering the documentary counseling summary that makes no indication of these conversations. Lastly, at the hearing, Knox was able to detail many of § 504.840's provisions almost verbatim. Knox's familiarity contradicts that his only recourse was a verbal conversation; as Knox knew the procedures, "he would have needed to exhaust in the manner specified—that is, he must have filed

8

in writing." *Hernandez v. Dart*, 814 F.3d 836, 843 (7th Cir. 2016).

Ultimately, Knox stated he did not file another grievance relating to his medical incident after not hearing back because he believed they would have returned his grievance for being duplicative. (Dkt. 92 at 18:16–17). To exhaust, Knox needed to follow the procedural rules to submit grievances, even if he believed exhaustion was futile, *Dole*, 438 F.3d at 809 (citing *Booth v. Churner*, 532 U.S. 731 (2001)), or cannot provide the desired relief, *Steiskal v. Lewitzke*, 553 F. App'x 611, 616 (7th Cir. 2014). From October 9, 2019 to the day the day he filed suit on July 15, 2020, Knox did not file any other grievances related to his instant claims. (Dkt. 92 at 30:25). This further diminishes his credibility, as he claims the denial of medical care was an ongoing issue for almost one year, and he continued to bring unrelated grievances during this time. *See also Logan v. Emerson*, No. 10 CV 4418, 2012 WL 3292829, at *5 (N.D. Ill. Aug. 9, 2012) (finding no exhaustion where there was no evidence defendant "pursued the lost/destroyed grievance or attempted to complete the process, either by appeal or by filing a new grievance"); *Washington v. Kester*, No. 22 CV 50214, 2023 WL 5243619, at *5 (N.D. Ill. July 25, 2023), report and recommendation adopted, No. 22 CV 50214, 2023 WL 5227000 (N.D. Ill. Aug. 15, 2023) (finding plaintiff failed to exhaust when he "abandoned the grievance process" by solely asking his counselor where the grievance was and then filing suit when he received no response). Thus, weighing the evidence and determining credibility, the Court determines that Knox failed to fully exhaust his administrative remedies. Knox's suit is dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff Knox failed to exhaust the administrative remedies available to him and his case is dismissed.

9

                                                              _____  
                                                              Virginia M. Kendall  
  Date: February 1, 2024                                 United States District Judge